# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| NORMAL PARM, JR., ET AL | CIVIL ACTION NO. 01-2624 |
| VERSUS | JUDGE ROBERT G. JAMES |
| MARK W. SHUMATE | MAG. JUDGE JAMES D. KIRK |

## RULING

Pending before the Court is a Motion for Rehearing and Reconsideration and Motion for Amendment of Judgment filed by Plaintiffs on September 9, 2006 [Doc. No. 141].

On August 29, 2006, the Court issued a ruling ("Ruling") [Doc. No. 139] adopting in part and declining to adopt in part the findings and conclusions set forth in the Magistrate Judge's Report and Recommendation [Doc. No. 82]. The Court also denied the Plaintiffs' motion for partial summary judgment [Doc. No. 5] and granted the Defendant's cross-motion for summary judgment [Doc. No. 11].

On September 21, 2006, Defendant filed a Memorandum in Opposition [Doc. No. 148] to the Plaintiffs' Motion for Rehearing and Reconsideration and Motion for Amendment of Judgment.

On September 21, 2006, Walker Cottonwood Farms, LLC ("Walker") filed an Amicus Brief [Doc. No. 147] in Opposition to the Plaintiffs' Motion for Rehearing and Reconsideration and Motion for Amendment of Judgment.

On September 29, 2006, Plaintiffs filed a Motion for Leave to File Reply Brief [Doc. No. 155] and it was denied by the Court on October 10, 2006.

After reviewing the documents submitted by the parties, the Court is now ready to rule. For the following reasons, Plaintiffs' Motion for Rehearing and Reconsideration and Motion for

Amendment of Judgment is DENIED.

**I.      Standard of Review**

The Court may alter or amend a judgment within ten days upon motion by a party under Federal Rule of Civil Procedure 59(e). Fed. R. Civ. P. 59(e). The Court finds that Plaintiffs' motion was served within ten days of the Court's Ruling of August 29, 2006. Accordingly, this motion is governed by Rule 59(e).

The Court has discretion in deciding whether to reopen a case in response to a motion for reconsideration, but must balance the need for the litigation to close and the need to render just decisions based on the facts. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (*en banc*). Accordingly, a motion seeking review of a grant of summary judgment seeks "an extraordinary remedy that should be used sparingly." *Templet v. Hydrochem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Clancy v. Employers Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)).

Under Rule 59(e), the Court is guided by the following factors: (1) whether the judgment was based upon a manifest error of fact or law, (2) the existence of newly discovered or previously unavailable evidence, and (3) an intervening change in controlling law. *See* 11 WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1 (2d ed. 1995).

**II.     Analysis**

Plaintiffs argue that the Ruling made several factual errors critical to ascertaining the scope of federal and state servitudes, failed to apply binding precedent of the United States Supreme Court

and the Fifth Circuit Court of Appeals, and failed to apply binding state legal authority.

### A. Factual Error

Plaintiffs challenge the characterization of the disputed Walker Lands as "flooded" when the Mississippi River rises and falls between 77 and 112 feet mean sea level. Plaintiffs contend that flooding occurs when water rises above its normal high water level, here, above 112 feet mean sea level. Plaintiffs argue this "clear factual error" by the Court is important because the Plaintiffs do not seek to use any of the "flooded" Walker Lands. However, the Ruling correctly focused on the Plaintiffs' rights on land between the normal low and high water mark and thus this mis-characterization (if any) does not affect the disposition.

Plaintiffs also argue the Court failed to distinguish between the river "bed" under federal law and the river "bed" and "bank" under state law, which are defined differently.[1] However, again, the Court correctly focused on the same area of land and water comprised by the federal river bed and state river bed and river bank.

### B. Federal Precedent

Plaintiffs claim the Court failed to apply binding federal authority confirming the Plaintiffs' federal right to fish on the Walker Lands. These arguments were appropriately rejected by the Court and therefore do not provide a basis for reconsideration. However, the Court will briefly address several points.

---

[1] "Under federal law, the public's right to use navigable waters extends across the river "bed" of the navigable waterway, thus extending across the surface of the water laterally up to the normal high water mark. In contrast, under State law this same area is referred to cumulatively as the river bed and the river bank." [Doc. No. 141, p. 6].

The federal common law right of navigation allows the public to use navigable waters for "legitimate purposes of travel or transportation, for boating or sailing for pleasure, as well as carrying persons or property for hire." *Silver Springs Paradise Co. v. Ray,* 50 F.2d 356, 359 (5th Cir. 1931). However, the federal common law right of navigation does not provide a basis for the public to fish on navigable waters. *Id.* While Plaintiffs urge the Court to interpret *Silver Springs* broadly, the Court has declined to do so.

Further, the facts in the instant case do not provide a basis to extend the holding in *Silver Springs*. Unlike the submerged land in *Silver Springs* that had a direct connection to the navigable source of water, Gassoway Lake is more than three miles from the Mississippi River and remains landlocked most of the year. *See Walker Lands*, 38, 376-CA, p. 5 (La. App. 2 Cir. 4/14/04); 871 So.2d 1258, 1262. While the Plaintiffs in *Silver Springs* sought access in order to transport persons in boats for commercial purposes, the Plaintiffs here seek access in order to fish for recreational purposes. *Id.* at 1267.

Similarly, the federal navigational servitude under the Commerce Clause, if one were found to exist on the Walker Lands, does not yield a right to fish. *See Blanchard v. Williams*, No. 92-0941 (W.D. La. Sep. 19, 1995), *aff'd*, 98 F.3d 1339 (5th Cir. 1996). In *Blanchard v. Williams*, the Court declined to find a federal right to fish upon the surface of flooded swamplands lying between two navigable water bodies. The Court reasoned that the scope of the servitude across the surface of the water only permitted uses incident to navigation, not fishing. *Id.* at 11. Moreover, the Court held that "the use of its bed and banks, and particularly public fishery rights therein, remain purely matters of state law." *Id.* at 12.

### C. State Precedent

Plaintiffs claim the Court failed to apply binding state authority. Plaintiffs claim the Louisiana Constitution, statutes, and case law preserve a right to fish in the rivers of Louisiana. These arguments were appropriately rejected by the Court in the Ruling and therefore do not provide a basis for reconsideration. However, the Court will briefly address several points.

Article 1, Section 27 of the Louisiana Constitution does preserve a right to hunt and fish. However, this provision also recognizes the authority of the state to regulate such recreational uses and the right of private property owners to exclude users from private property. Therefore, Plaintiffs' argument that the Constitution creates an "inalienable" right to fish, hunt, and trap fails to recognize the intrinsic limits on this right.

The Plaintiffs also argue that, under state law, riparian ownership does not include control of navigable waters (upon which they assert their right to fish). Because they do not assert a right to use the privately owned dry bank area of a navigable river and seek only the right to use the navigable waters themselves, Plaintiffs argue that the restrictions on bank servitudes in Louisiana Civil Code Article 456 do not apply. Therefore, on a navigable waterway at water levels between the normal low and high water mark, the Plaintiffs claim a right to fish "regardless of who owns the underlying ground."

However, the argument that the restrictions in Article 456 pertain only to "actions that a navigating public might need to do ON DRY GROUND" is without merit. The scope of the bank servitude under Article 456 does not change depending on whether a bank is dry or covered with

water. State case law suggests that fishing and hunting are not incidental to navigation.[2] The Court rejects the Plaintiffs' attempts to distinguish this case law under their narrow reading.

Plaintiffs also argue that their right to fish flows from the navigable character of the water itself and not ownership of the underlying land. The Second Circuit declined to find that Gassoway Lake and the drainage ditch are navigable. Therefore, when the surrounding Walker Lands are periodically inundated, the property, including the water flowing above the land, does not become navigable.

### D. CONCLUSION

Louisiana is known as the "Sportsman's Paradise" because of its abundance of recreational opportunities, including fishing. However, access to those recreational opportunities must be balanced against the rights of private property owners. Having carefully considered and rejected the arguments presented by Plaintiffs and failing to find any manifest errors of fact or law, the Court finds that Plaintiffs' Motion for Rehearing and Reconsideration and Motion for Amendment of Judgment is DENIED.

---

[2]*See Walker Lands*, 871 So.2d at 1268 n.16 (citing *State v. Barras*, 615 So.2d 285 (La. 1993) and *Warner v. Clarke*, 232 So.2d 99 (La. App. 2 Cir. 1970)) (concluding the right to hunt and fish upon water between the river and the levee is unrelated to navigation); *see also Buckskin Hunting Club v. Bayard*, 03-1428, p. 10 (La. App. 3 Cir. 3/3/04); 868 So.2d 266, 273 (finding that use of the banks along navigable rivers is "limited to navigation and not hunting."); *Edmiston v. Wood*, 566 So.2d 673, 675-76 (La. App. 2 Cir. 1990) (finding that fishing and hunting in a boat over flooded private property is not incidental to navigable character of the stream and its enjoyment as an avenue of commerce).

MONROE, LOUISIANA, this 11th day of October, 2006.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE